ROGERS, J.,
dissenting.
Defrauded investors who have not entered into arbitration agreements presumably do not have to arbitrate their fraudulent conveyance claims against third-party recipients of them money, even if the fraudulent conveyance (by the fraudfeasor to the third party) itself involved a contract with an arbitration clause. Assuming that this is so, the same should be true for a receiver appointed to recover on claims against third-party recipients where the basis for the receiver’s action is fraud on the investor rather than some obligation that runs from the third party to the receiver’s principal. I am therefore not able to conclude that arbitration should be required in the present case.
Cases like Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), and Fazio v. Lehman Bros., Inc., 340 F.3d 386 (6th Cir.2003), are different. When an investor contracts with a fraudfeasor (e.g., a broker), with an arbitration clause, and then sues the broker (e.g. for fraudulent inducement to contract), those cases make clear that a general fraud-in-the-inducement claim will not be enough to avoid arbitration. This should be contrasted with, for instance, a hypothetical situation in which an investor contracts with a broker to invest investor’s money in viaticáis, and the broker fraudulently gives the money to someone he is in cahoots with (e.g., his brother), let’s say by means of a “contract” to pay the brother millions for some worthless items. An arbitration clause in the latter contract should not be enforceable against the investor when the investor sues the brother to get the investor’s money back. It should be no different if the brother is sued by a receiver for the broker, rather than by the investor, if the receiver is asserting the interests of the investor, not the broker.
It is true that in a somewhat similar case, Javitch v. First Union Securities, 315 F.3d 619 (6th Cir.2003), we held that a receiver was bound by arbitration agreements “to the same extent that the receivership entities [i.e., the broker in the above example] would have been absent the appointment of the receiver.” Id. at 627. Javitch appears to be different in an important respect, however, in that the receiver in Javitch was found to have been asserting only claims that belonged to the receivership entities. Indeed, Javitch recognized that a receiver may stand in the shoes of the creditor as well as of the debtor, id. at 626, although the district court in Javitch had properly found that the receiver asserted only claims belonging to the receivership entities, id. at 627. This conclusion was based on an assessment of both the claims being asserted by the receiver and the authority granted to him. If the receiver (Moran in this case) could be ascertained to be bringing suit to assert the interests of the defrauded investors (by examination of the nature of the claims and the order appointing the receiver), then the receiver would not necessarily be bound by the arbitration agreement, id. at 626.
The receiver’s claims in the instant case do not appear to be based so much on Svete’s obligations to LifeTime as upon Svete’s obligations to the defrauded investors.[10] See, for example, the excerpts be *634 low. LifeTime would really have no claim against Svete were it not that the contracts against Svete allegedly constituted fraud on the investors. It follows that, under the contingency preserved in Jav-itch, the receiver is bound by the arbitration agreement no more than the investors would be in a suit against Svete for receiving them money knowing it was rightfully theirs. I would therefore remand for the district court to determine, based on an assessment of both the claims being asserted by the receiver and the authority granted to him, whether the receiver is bringing suit to assert the rights of the defrauded investors. If so, arbitration should not be required.
Below are some excerpts from the Complaint suggesting that the rights asserted are those of persons buying viatical contracts through LifeTime, as contrasted to rights of LifeTime against Svete (emphases added):
3. Following his appointment, the Receiver has learned, among other things, of the existence of certain transactions which resulted in the diversion of significant funds from LifeTime accounts to the detriment of LifeTime’s investors.
26. The Order of Appointment granted the Receiver the authority to, among other things, take exclusive control and possession of all receivership assets and “take any all action as the Receiver may deem necessary or prudent” to “protect the interests of the beneficial owners” of the LifeTime Portfolio of life insurance policies (Order of Appointment, ¶ 12). Such beneficial owners are primarily those individuals and entities who invested money with LifeTime ostensibly for the purchase of one or more viatical settlement contracts.
27. The Order of Appointment was modified and/or clarified on May 5 and December 2, 2004. Each of these modifying orders clarified the expansive scope of the Receiver’s authority to take the steps necessary to protect the interests of LifeTime’s investors.
52. In 1997 and continuously through the present, Defendants have continued the fraudulent scheme described above through continued misrepresentations to LifeTime investors.
67. Defendants owed, at all times pertinent to Plaintiffs Claims for Relief set forth in this action a fiduciary duty to investors of LifeTime to ensure that the life expectancies were accurate, that the integrity of the premium reserve account and the funds deposited therein were maintained, that the Portfolio was preserved and not depleted, that actions not be taken rendering LifeTime insolvent or unable to pay its obligations as and when they became due, and that all transactions entered into by LifeTime were reasonable and prudent and in the best interests of LifeTime and its investors and not merely Svete or his affiliated entities and/or business associates.

. That the receiver may be asserting the interests of the investors does not affect the receiver's standing to bring claims as receiver of LifeTime, which was injured by the depletion of its assets. See Scholes v. Lehmann, 56 F.3d 750, 753-55 (7th Cir. 1995).